**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| | : | |
| RENAGADE THERAPEUTICS | : | Civil Action No. _____ |
| MANAGEMENT INC. | : | |
| Plaintiff, | : | |
| | : | **COMPLAINT FOR DAMAGES,** |
| v. | : | **INJUNCTIVE AND OTHER** |
| | : | **RELIEF FOR VIOLATIONS OF** |
| RENEGADE THERAPEUTICS CORP. | : | **15 USC § 1114; 15 USC § 1125(a);** |
| | : | **AND RELATED CLAIMS** |
| Defendant. | : | |
| | : | **DEMAND FOR JURY TRIAL** |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff ReNAgade Therapeutics Management Inc. ("ReNAgade Therapeutics" or "Plaintiff"), by and through its undersigned attorneys, as and for its complaint, alleges as follows:

<u>**The Nature of This Case**</u>

1.      This is an action against defendant Renegade Therapeutics Corp. ("Defendant") for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); common law trademark infringement; and unfair and deceptive business practices in violation of NY Gen. Bus. L. § 349. These claims arise out of Defendant's infringement of ReNAgade Therapeutics' trademarks RE-NAGADE and RENAGADE THERAPEUTICS in connection with Defendant's use of the marks RENEGADE and RENEGADE THERAPEUTICS for its business.

<u>**PARTIES**</u>

2.      Plaintiff is a corporation, organized under the laws of the State of Delaware, with its principal place of business located in Cambridge, Massachusetts.

3.      Upon information and belief, Defendant is organized under the laws of the State of Delaware, with its principal place of business located in Scarsdale, New York.

1

## JURISDICTION

4.      The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 for ReNAgade Therapeutics' claims that arise under federal law and are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c).  The Court has subject matter jurisdiction over ReNAgade Therapeutics' remaining claims under 28 U.S.C. § 1367 because they are substantially related to ReNAgade Therapeutics' federal claims such that they form part of the same case or controversy.

5.      The Court has personal jurisdiction over Defendant because the company and its Chief Executive Officer are located in New York.  Further, Defendant purports to transact business in New York and this action arises out of conduct in New York.

## VENUE

6.      Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district.

## FACTUAL ALLEGATIONS

### ReNAgade Therapeutics' Intellectual Property Rights

7.      ReNAgade Therapeutics is a biotech company that works at the cutting edge of Ribonucleic acid ("RNA") delivery, science, and technology.  RNA is a nucleic acid present in all living cells that has structural similarities to DNA.  Unlike DNA, however, RNA is most often single-stranded.[1]  ReNAgade Therapeutics' team of professionals work to rapidly expand the world of RNA medicine through the fields of RNA molecular biology, synthetic chemistry, lipid chemistry, artificial intelligence and more.

---

[1] *See* National Human Genome Research Institute, Ribonucleic Acid (RNA), https://www.genome.gov/genetics-glossary/RNA-Ribonucleic-Acid.

8.     Like many biotech companies, ReNAgade Therapeutics formed and selected its name before surfacing to the public.  Having the letters R-N-A and reflecting a creative, unconventional approach, the mark ReNAgade was the perfect moniker for the company.  ReNAgade Therapeutics selected its name in late 2020.

9.     Having selected its name in late 2020, to protect its name during its formation activities, ReNAgade Therapeutics filed intent-to-use applications for RENAGADE (the "Mark") with the Trademark Office on February 21, 2021, including application serial number 90545046 (the "046 Application"), declaring an intent to use the Mark in connection with their business.

10.     The Trademark Office issued a Notice of Allowance of the '046 application on July 5, 2022.  *See* Exhibit A, attached hereto.

11.     ReNAgade Therapeutics filed a specimen of use ("SOU") for the '046 Application with the Trademark Office on November 16, 2022. The SOU identifies the following uses in commerce:

> Biochemical preparations for scientific purposes; Nucleic acid for laboratory use; Reagents for research purposes; Reagents for scientific and research use; Active chemical ingredients for use in the manufacturer of pharmaceuticals for treating rare diseases, cancers, neurological disorders, cardiovascular disorders, inflammatory disorders, immunoregulatory disorders, metabolic disorders, infectious disorders and reproductive disorders; Biochemicals for in vitro and in vivo scientific use; Biochemicals, namely, polynucleotides for in vitro and in vivo scientific and research purposes; Chemical additives for use in the manufacture of pharmaceuticals; Chemicals for use in the biochemical and chemical industry; Reagents for scientific or medical research use.

The SOU filed on November 16, 2022 is attached as Exhibit B.

12.     The Trademark Office confirmed acceptance of the statement of use on December 24, 2022.  *See* Notice of Acceptance of Statement of Use, attached hereto as Exhibit C.  This use is deemed effective as of the February 21, 2021 filing date of the '046 Application.  As a result, ReNAgade Therapeutics has constructive national use of the Mark in connection with RNA therapeutics as stated in the SOU running from February 21, 2021.

13.    On its website and social media, ReNAgade Therapeutics uses the Mark both alone and in connection with the word "Therapeutics" given its company name.  Through its design, development, and marketing activities, ReNAgade Therapeutics has worked to advance medical capabilities with respect to RNA compounds in connection with the Mark.

14.    ReNAgade Therapeutics collaborates with other companies to advance scientific research and development, which includes marketing of ReNAgade Therapeutics through the use of the Mark.  ReNAgade Therapeutics has also authorized third party use of the Mark in connection with marketing and advertising ReNAgade Therapeutics' scientific research efforts and partnerships.

15.    As one example, ReNAgade Therapeutics has partnered with Orna, who primarily works on combatting infectious diseases. As a result of their partnership, the Mark is displayed on Orna's website.  https://www.ornatx.com/our-pipeline/.  In addition to use of the Mark alone, the Mark is often displayed in a stylized manner in the following logo:



**Defendant's Unauthorized Use of RENEGADE THERAPEUTICS**

16.    On information and belief including from its website and LinkedIn profile, Defendant purports to be a research and development company dedicated to the treatment of autoimmune diseases such as multiple sclerosis, neurological disorders, and inflammatory disorders.

17.    On information and belief drawn from its website and LinkedIn profile, Defendant purports to be working to develop new therapeutic approaches to cure multiple sclerosis (MS).  https://www.rgtherapeutics.com/.  An earlier version of the website described Defendant's work

with antiviral and antimicrobial agents, enzyme replacement therapy, gene therapy, and hormonal therapies.

18.     On information and belief, Defendant began calling itself Renegade Therapeutics no earlier than November of 2021, over six months after ReNAgade Therapeutics' constructive first use date of February 21, 2021.

19.     The summer of 2022, ReNAgade Therapeutics discovered Defendant's website. ReNAgade Therapeutics came across Defendant's website when a potential investor expressed alarm about the possibility of investing in the entity described on Defendant's website. The potential investor had entered the search term "ReNAgade Therapeutics" into Google.  Defendant's website appears near the top of such search results with a nearly identical name and life science-related business purpose resulting in the potential investor's confusion.

20.     Recently, Defendant revamped his website with the top of the home page displaying as follows:



Is Poised To Amaze

# SOON

21.     Upon information and belief, Defendant has used and currently uses the nearly identical RENEGADE and RENEGADE THERAPEUTICS Marks through its own business

name, financial filings, and marketing, including throughout Defendant's webpage to promote its own services.

22.     Upon information and belief, Defendant advertises its services using the RENE-GADE and RENEGADE THERAPEUTICS Marks through the same marketing channels that Re-NAgade Therapeutics utilizes, including without limitation, the Internet and LinkedIn. The REN-EGADE and RENEGADE THERAPEUTICS Marks are used or have been used so often on the aforementioned website and materials that it creates the false impression that ReNAgade Thera-peutics endorses or otherwise approves the services Defendant provides. In fact, RENEGADE and/or RENEGADE THERAPEUTICS appears on every page of Defendant's website, including in prominent positions.

23.     Upon information and belief, Defendant uses and/or used the RENEGADE and RENEGADE THERAPEUTICS Marks with the intent to mislead consumers into believing that Defendant is and/or was a licensed ReNAgade Therapeutics affiliate and/or otherwise sponsored or endorsed by ReNAgade Therapeutics and with the intent to profit by trading on ReNAgade Therapeutics' goodwill.

24.     ReNAgade Therapeutics does not endorse and has never endorsed Defendant's business or Defendant's unauthorized use of the RENEGADE or RENEGADE THERAPEUTICS Marks. ReNAgade Therapeutics has never authorized Defendant's use of the RENEGADE or RENEGADE THERAPEUTICS Marks.

25.     Upon information and belief, Defendant is now using the trademark, derivative, and/or colorable imitations of the RENEGADE and RENEGADE THERAPEUTICS Marks in a manner that is likely to cause confusion or mistake or to deceive consumers as to the source of

origin of Defendant's services, and Defendant intends to profit and be unjustly enriched by such use of the RENEGADE and RENEGADE THERAPEUTICS Marks.

26.     Upon information and belief, followers and visitors to Defendant's website and members of the general public have been confused by the use of the RENEGADE and RENE-GADE THERAPEUTICS Marks on Defendant's website.

27.     The use of the RENEGADE and RENEGADE THERAPEUTICS Marks constitute a misrepresentation of origin and an unfair tactic by Defendant to confuse members of the public into believing that the Defendant is associated with ReNAgade Therapeutics.

28.     Defendant's actions, by virtue of using the RENEGADE and RENEGADE THER-APEUTICS Marks, have resulted and will continue to result in actual confusion and in actual damage to Plaintiff.

29.     Defendant's actions are likely to confuse consumers because of the similarity of "Renegade Therapeutics" and "ReNAgade Therapeutics," the similarity of the services offered by the parties, and have deliberately misled and will continue to mislead ReNAgade Therapeutics' potential customers, as well as the public at large, to believe, contrary to fact, that Defendant is associated with ReNAgade Therapeutics.

**Defendant's Bad Faith and Extortionate Response to ReNAgade Therapeutics**

30.     Given the likelihood of confusion between ReNAgade Therapeutics and a company calling itself "Renegade Therapeutics," beginning in August 2022, counsel for ReNAgade Therapeutics made repeated efforts to contact Defendant through its CEO and Founder, Dr. Matt Mandel.

31.     In September 2022, counsel for Dr. Mandel responded to counsel for ReNAgade Therapeutics.   ReNAgade Therapeutics' counsel explained to counsel for Dr. Mandel that

ReNAgade Therapeutics had successfully completed examination on the '046 Application and that ReNAgade Therapeutics therefore enjoyed priority of use over Defendant.  Counsel asked that Defendant wind down its use of the RENEGADE and RENEGADE THERAPEUTICS Marks, and suggested that ReNAgade Therapeutics would consider assisting Defendant with the cost of searching for and securing a new name, which was estimated to be in the $5,000 to $10,000 range.

32.     In spite of the fact that ReNAgade Therapeutics has legally-recognize priority and that Defendant's website suggests Defendant is currently fairly dormant, when counsel for Defendant called counsel for ReNAgade Therapeutics back in October 2022, he attempted to extort $500,000 for Defendant to cease use of the RENEGADE and RENEGADE THERAPEUTICS Marks.  Counsel for ReNAgade Therapeutics reiterated that ReNAgade Therapeutics had priority over his client, and that his client had no basis for demanding payment of any kind, let alone $500,000.  Counsel for ReNAgade Therapeutics invited Counsel for Defendant to reconsider this baseless and bad faith demand and respond to the prior offer to assist with the cost of transition to a new mark.

33.     Since that discussion, counsel for Defendant has not contacted counsel for ReNAgade Therapeutics.

**Defendant's Subsequent Bad-Faith Filing of a Trademark Application
for the RENEGADE THERAPEUTICS Marks**

34.     After being put on express notice of ReNAgade Therapeutics' superior rights in the Marks, rather than cease its infringing conduct or continue the dialog between counsel, Defendant instead went silent for a few weeks.  Then on November 22, 2022, Defendant filed a trademark application serial no. 97688772, for the mark RENEGADE THERAPEUTICS CORP. ("Defendant's Application").

35.     Specifically, Defendant's Application seeks registration for use of RENEGADE THERAPEUTICS CORP. for "pharmaceutical preparations for use in the treatment of autoimmune diseases, multiple sclerosis, Crohn's disease, ulcerative colitis, inflammatory disorders, neurological disorders, neurodegenerative disorders, and Epstein-Barr virus associated with lymphoproliferative disorders."

36.     The signatories identified on Defendant's Application are Ricky DeMello and Matt Mandel.  Ricky DeMello is identified as Therapeutics Area Counsel and Matt Mandel is identified as Chief Executive Officer.

37.     Defendant's Application identifies the applicant as RENEGADE Therapeutics Corp., a corporation of New York, having an address of 7 Hillview Drive, Scarsdale, New York 10583.  However, according to the Secretary of State for New York, there is no record of this purported New York corporation.  A true and correct copy of Defendant's Application is attached as Exhibit D.

38.     Defendant's Application was filed with full knowledge of ReNAgade Therapeutics's rights in the Mark, and therefore was filed in bad faith.  Defendant' acts are willful and intentional, and represent a deliberate effort to usurp ReNAgade Therapeutics' Mark.

39.     As a direct and proximate result of these acts of unfair competition, trademark infringement and false designation of origin, ReNAgade Therapeutics will sustain damage to its business, goodwill, reputation, and profits, which damage will be ongoing.

### FIRST CAUSE OF ACTION
**Trademark Infringement**
**15 U.S.C. §§ 1114 and 1125(a)**

40.     ReNAgade Therapeutics re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

41.     ReNAgade Therapeutics is the owner of the Mark and has rights under the Mark through the filing of its intent-to-use application and specimen of use.

42.     Defendant willfully and knowingly used, and continues to use, the RENEGADE and RENEGADE THERAPEUTICS Marks, which are functionally identical to the Mark, in commerce without the consent of ReNAgade Therapeutics in violation of 15 U.S.C. §§ 1114 and 1125(a)(1)(a).

43.     Defendant's use of the RENEGADE and RENEGADE THERAPEUTICS Marks in connection with its business is likely to cause confusion, cause mistake, or deceive because it suggested that the services provided by Defendant are the same as the services legitimately bearing ReNAgade Therapeutics' Mark.  Defendant's use is likely to cause confusion because it also suggests that it's business, or the services provided by its business, originate from, or are sponsored, authorized, or otherwise connected with ReNAgade Therapeutics.

44.     The services provided by Defendant are not, in fact, authorized, sponsored, or otherwise connected with ReNAgade Therapeutics. Defendant's unauthorized use of the RENEGADE and RENEGADE THERAPEUTICS Marks has materially damaged the value of the Mark, caused significant damage to ReNAgade Therapeutics' business relations, and infringed on ReNAgade Therapeutics's Mark.

45.     As a proximate result of Defendant's actions, ReNAgade Therapeutics has suffered, and will continue to suffer, great damage, including to its business, good will, reputation, and profits in an amount to be proven at trial.

46.     Pursuant to 15 U.S.C. § 1116, ReNAgade Therapeutics is entitled to injunctive relief enjoining Defendant's infringing conduct.

47.    Pursuant to 15 U.S.C. § 1117(a), ReNAgade Therapeutics is entitled to an award of attorneys' fees.

## SECOND CAUSE OF ACTION
### False Advertising
### 15 U.S.C. § 1125(a)(1)(b)

48.    ReNAgade Therapeutics re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

49.    ReNAgade Therapeutics is the owner of the Mark and has rights under the Mark through the filing of its intent-to-use application and specimen of use.

50.    Defendant willfully and knowingly used, and continues to use, the RENEGADE and RENEGADE THERAPEUTICS Marks in interstate commerce for purposes of advertising and promoting its business without the consent of ReNAgade Therapeutics in violation of 15 U.S.C. § 1125(a)(1)(b).

51.    Defendant's advertisements and promotions of its business unlawfully using the RENEGADE and RENEGADE THERAPEUTICS Marks have been disseminated to the relevant consumer population.

52.    Defendant's use of the RENEGADE and RENEGADE THERAPEUTICS Marks in connection with the unauthorized advertising and promotion of its business's services misrepresents the nature, characteristics, qualities, and origin of the services.

53.    Defendant's use of the RENEGADE and RENEGADE THERAPEUTICS Marks in connection with its business is likely to cause confusion, cause mistake, or deceive because it suggested that the services provided by Defendant are the same as the services legitimately bearing ReNAgade Therapeutics' Mark.  Defendant's use is likely to cause confusion because it also

suggests that it's business, or the services provided by its business, originate from, or are sponsored, authorized, or otherwise connected with ReNAgade Therapeutics.

54.     Defendant's unauthorized use of the RENEGADE and RENEGADE THERAPEUTICS Marks, in advertising and otherwise, infringes on ReNAgade Therapeutics' Mark.

55.     As a proximate result of Defendant's actions, ReNAgade Therapeutics has suffered, and will continue to suffer, great damage, including to its business, good will, reputation, and profits in an amount to be proven at trial.

56.     Pursuant to 15 U.S.C. § 1116, ReNAgade Therapeutics is entitled to injunctive relief enjoining Defendant's infringing conduct.

57.     Pursuant to 15 U.S.C. § 1117(a), ReNAgade Therapeutics is entitled to an award of attorneys' fees.

**THIRD CAUSE OF ACTION**
**New York State Common Law Trademark Infringement**

58.     ReNAgade Therapeutics re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

59.     ReNAgade Therapeutics is the owner of the Mark and has rights under the Mark through the filing of its intent-to-use application and specimen of use.

60.     Defendant willfully and knowingly used, and continue to use, the RENEGADE and RENEGADE THERAPEUTICS Marks in interstate commerce for purposes of providing services on the Internet and otherwise without the consent of ReNAgade Therapeutics.

61.     Defendant's use of the RENEGADE and RENEGADE THERAPEUTICS Marks in connection with its business is likely to cause confusion, cause mistake, or deceive because it suggested that the services provided by Defendant are the same as the services legitimately bearing ReNAgade Therapeutics' Mark.  Defendant's use is likely to cause confusion because it also

suggests that it's business, or the services provided by its business, originate from, or are sponsored, authorized, or otherwise connected with ReNAgade Therapeutics.

62.     The services provided by Defendant are not, in fact, authorized, sponsored, or otherwise connected with ReNAgade Therapeutics.

63.     Defendant's unlawful actions and unauthorized use of the Mark has materially damaged the value of the Mark, caused significant damage to ReNAgade Therapeutics' business relations, and infringed on ReNAgade Therapeutics' Mark.

64.     As a proximate result of Defendant's actions, ReNAgade Therapeutics has suffered, and will continue to suffer, immediate and irreparable harm, as well as great damage, including to its business, good will, reputation, and profits in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**Unfair and Deceptive Business Practices Under**
**NY Gen. Bus. L. § 349**

65.     ReNAgade Therapeutics re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

66.     This claim arises under the laws of the State of New York.

67.     Defendant has engaged and is engaging in consumer-oriented conduct which is deceptive or misleading in a material way, constituting unfair and deceptive business practices in violation of § 349 of the NY General Business Law.

68.     Defendant's use of the RENEGADE and RENEGADE THERAPEUTICS Marks in connection with its business is likely to cause confusion, cause mistake, or deceive because it suggested that the services provided by Defendant are the same as the services legitimately bearing ReNAgade Therapeutics' Mark.  Defendant's use is likely to cause confusion because it also

suggests that it's business, or the services provided by its business, originate from, or are sponsored, authorized, or otherwise connected with ReNAgade Therapeutics.

69.     The services offered by Defendant are not, in fact, authorized, sponsored, or otherwise connected with ReNAgade Therapeutics.

70.     Defendant's conduct is likely to mislead a sensible consumer acting reasonably under the circumstances.

71.     Defendant's conduct has resulted or is likely to result in consumer injury or harm to the public interest.

72.     In addition, Defendant's unfair and deceptive business practices have caused ReNAgade Therapeutics to suffer, and continue to suffer, substantial injury, including damage to its existing and potential business relations.

## **PRAYER FOR RELIEF**

WHEREFORE, ReNAgade Therapeutics prays for relief and judgment as follows:

A.     Judgment in favor of ReNAgade Therapeutics and against Defendant in an amount to be determined at trial, including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits, and other damages, as permitted by law;

B.     A preliminary and permanent injunction enjoining Defendant and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendant, and all of those in active concert and participation with Defendant (the "Enjoined Parties") as follows:

    i)     Prohibiting Enjoined Parties from using, registering, or attempting to register the RENEGADE and RENEGADE THERAPEUTICS Marks or any

14

other mark that is confusingly similar to ReNAgade Therapeutics' Mark in any manner, expressly including Defendant's Application and including but not limited to, advertising, selling, promoting, or displaying the RENE-GADE or RENEGADE THERAPEUTICS Marks as well as any financial, marketing, webpages, or other documents bearing the RENEGADE or RENEGADE THERAPEUTICS Marks; and

ii)    Requiring the Enjoined Parties to take all action to remove from the En-joined Parties' websites, social media, marketing, promotions, or any other any reference to the RENEGADE or RENEGADE THERAPEUTICS Marks or any other mark that is confusingly similar to ReNAgade Thera-peutics' Mark;

C.    An award of attorneys' fees, costs, and expenses; and

D.    Such other and further relief as the Court deems just, equitable and proper.

Dated: January 12, 2023            Respectfully submitted,
      New York, New York

**Morgan, Lewis & Bockius LLP**

By:  /s/ *Jawad B. Muaddi*
JAWAD B. MUADDI
101 Park Avenue
New York, NY 10178
Tel: 212.309.6000
Fax: 212.309-6001
jawad.muaddi@morganlewis.com

JOSHUA M. DALTON (*pro hac vice* to be filed)
One Federal Street
Boston, MA 02110
Telephone: 617-951-8000
josh.dalton@morganlewis.com

*Attorneys for Plaintiff ReNAgade Therapeutics Management Inc.*

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, ReNAgade Therapeutics demands a trial by jury on all issues so triable.

**MORGAN, LEWIS & BOCKIUS LLP**

By:  /s/ *Jawad B. Muaddi*

JAWAD B. MUADDI
101 Park Avenue
New York, NY 10178
Tel: 212.309.6000
Fax: 212.309.6001
jawad.muaddi@morganlewis.com

JOSHUA M. DALTON (*pro hac vice* to be filed)
One Federal Street
Boston, MA 02110
Telephone: 617-951-8000
josh.dalton@morganlewis.com

*Attorneys for Plaintiff ReNAgade Therapeutics
Management Inc.*